IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| ANNIE F. PRUETT, | CV 04-3072-TC |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| JO ANNE B. BARNHART,<br>Commissioner of Social Security, | |
| Defendant. | |

ANNIE F. PRUETT
5926 Shady Brook Drive
Central Point, OR  97502-9333

    Plaintiff, *Pro Se*

KARIN J. IMMERGUT
United States Attorney
District of Oregon
NEIL EVANS
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902

JOANNE E. DANTONIO
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, WA 98104-7075

Attorneys for Defendant

Coffin, Magistrate Judge:

## BACKGROUND

Plaintiff, Annie Pruett (Pruett), brings this action for judicial review of a final decision of the Commissioner of Social Security denying her application for disability insurance benefits (DIB) under Title II of the Social Security Act (the Act). This court has jurisdiction under 42 U.S.C. § 405(g). The parties have consented to allowing Magistrate Judge Coffin to decide this case.

Pruett applied for DIB on September 25, 2000, but alleged disability beginning April 1, 1993, based on seizures, body pain, memory loss, muscle spasms, fibromyalgia, plantar fasciitis, vertebral fractures and colitis. Tr. 70.

Under Title II, a claimant must show that she became disabled during a period in which she had "insured status" under the program. See 42 U.S.C. § 416(I)(3). Pruett's last date insured was September 30, 1995.

Pruett was 44 years old at the time of the ALJ's final decision. Tr. 60. She claims to have both a high school diploma and a general equivalency degree. Tr. 812. In the past she has

worked as a cutoff saw operator, Navy communications worker, recreational vehicle sales office manager, receptionist, and data entry worker. Tr. 71. Pruett quit work in March, 1990, to be a stay-at-home mother. Tr. 826. In 1994, she worked for a few months in a law office, but claims she was terminated due to frequent absences. Tr. 821.

Following a hearing, wherein Pruett was represented by counsel, the ALJ denied her claim, finding that during the relevant period of time Pruett had the capacity to return to her past relevant work as a data entry secretary and cutoff saw operator, notwithstanding her current condition. Tr. 15-25.

On appeal to this court, Pruett, no longer represented by counsel, submitted a 53-page complaint essentially alleging the following: (1) the ALJ was biased; (2) the ALJ erred at step three by finding her alleged impairments did not meet or equal a listed impairment; (3) the ALJ erred by requiring objective medical evidence of her impairments; (4) the ALJ improperly discredited the medical evidence she did submit; (5) the ALJ wrongly discredited her testimony; and (6) the ALJ wrongly discredited the testimony of her husband.

For the reasons that follow, the Commissioner's decision is AFFIRMED, and this case is DISMISSED.

**STANDARD OF REVIEW**

The initial burden of proof rests on the claimant to establish disability. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner bears the burden of developing the record. DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.

The court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation. Andrews, 53 F.3d at 1039-40. If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its

judgment for that of the Commissioner." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001).

**DISABILITY ANALYSIS**

The Commissioner has established a five-step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520. The claimant bears the burden of proof at steps one through four. See Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). Each step is potentially dispositive.

Here, at step one, the ALJ found that Pruett had not engaged in substantial gainful activity since her alleged onset date. Tr. 20, 24; see 20 C.F.R. § 404.1520(b).

At step two, the ALJ found Pruett's depression and anxiety disorder were severe within the meaning of the Act. Tr. 21-22, 24; see 20 C.F.R. § 404.1520(c).

At step three, the ALJ found that Pruett's impairments did not meet or equal the requirements of a listed impairment. Tr. 22, 24; see 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d).

The ALJ assessed Pruett with the residual functional capacity (RFC) to do work at all exertional levels, with moderate limitations in the ability to interact appropriately with the general public. Tr. 24-25; see 20 C.F.R. §§ 404.1520(e), 404.1545.

At step four, the ALJ found that Pruett could have returned to her past relevant work as a data entry secretary and cutoff saw operator during the relevant period. Tr. 24-25. Having found Pruett not disabled at step four, the ALJ did not reach step five of the sequential evaluation. See 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f).

## DISCUSSION

### I. The ALJ was fair and impartial.

Pruett contends the ALJ was "biased, opinionated and not impartial" on page 51 of her Complaint, though her reasons are not completely clear. We begin with a presumption of administrative regularity under which administrative officials are presumed to be unbiased. Verdusco v. Apfel, 188 F.3d 1087, 1089-90 (9th Cir. 1999). The burden of rebutting this presumption is on the party asserting bias. Id.(citing Schweiker v. McClure, 456 U.S. 188, 195 (1982)). The burden is heavy, requiring the claimant to show a conflict of interest, or some other specific conduct, so extreme that it deprived the hearing of the fundamental fairness mandated by due process. See Scheweiker, 456 U.S. at 195; Verduzco, 188 F.3d at 1089); Liteky v. U.S., 510 U.S. 540, 555-556 (1994).

Pruett believes the ALJ was biased by an unflattering letter submitted by her ex-husband, even though the ALJ said of the letter, "This material is not relevant to the issue at hand and

has been disregarded." Complaint at 16; Tr. 20. Pruett points to no evidence whatsoever to suggest the ALJ did consider the information in this letter.

Pruett also seems to take issue with the ALJ's conclusion that medical opinions regarding her current functional limitations do not relate to her functional ability prior to September, 1995. Tr. 23. At page 50 of her Complaint she writes, "This statement by the ALJ would indicate that he believes that the Plaintiff has attempted to claim more recent impairments in her SSDI Claim for the period under review. This is absolutely NOT true." Pruett goes on to say it was "biased, opinionated and not impartial" of the ALJ to "place limited weight or no weight" on recent medical opinions about her current condition. Complaint at 50-51. However, the ALJ correctly stated that medical evidence of Pruett's current condition is not relevant to the determination of whether she was disabled before her DIB insured status expired on September 30, 1995.

Pruett's allegations of bias are not supported by the record. To the contrary, the record indicates that the ALJ conducted a fair hearing, patiently permitted Pruett's counsel to present arguments, including that Pruett's ex-husband's letter WAS relevant (Tr. 810), and provided a reasonable explanation of his findings and the manner in which he reached them.

Accordingly, I find Pruett has not established that she was deprived of the fundamental fairness required by due process.

**II. The ALJ properly determined that Pruett's impairments did not meet or equal a listed impairment at step three.**

Pruett contends her multiple medical diagnosis[1] "in and of themselves, certainly qualify the Plaintiff as Disabled in accordance with and as defined in the Social Security Act, Sections 216(I) and 223." Complaint at 7. This statement and the fact Pruett does not specify which listing she claims to meet, indicates that Pruett misconceives of her burden at step three.

At step three, the claimant has the burden of showing through medical evidence that her impairments "meet all of the specified medical criteria" contained in a particular listing. Sullivan v. Zebley, 493 U.S. 521, 530 (1990); 20 C.F.R. § 404.1512(a). Listed impairments are found at 20 C.F.R. 404, Subpart P, Appendix 1. The mere diagnosis of an impairment contained in the listings is not sufficient to sustain the burden.

The ALJ found, at step three, that Pruett's alleged impairments did not meet or equal the criteria of any listed impairment. In light of Pruett's failure to pose a colorable

---

[1] She lists approximately 18 different afflictions as her "current diagnosis," but then adds that some are "possible" diagnosis. Complaint at 8.

8 - OPINION AND ORDER

argument that she meets the specific criteria of a listed impairment, I affirm the ALJ's finding at step three without further discussion.

### III. The ALJ properly assessed Pruett's residual functional capacity.

A claimant's residual functional capacity (RFC) measures what an individual can do despite her limitations. SSR 96-8p. The ALJ must consider the whole record, and reconcile inconsistencies between medical and testimonial evidence, in order to arrive at a claimant's RFC. See SSR 96-5p.

In this case, the ALJ found Pruett's RFC during the April, 1992, to September, 1995, period was limited only by moderate limitations in the ability to interact appropriately with the general public. Tr. 24-25. Thus, he found Pruett could have returned to her past relevant work as a data entry secretary and cutoff saw operator. Id.

On page 52 of her Complaint, Pruett writes that she is confident she would not be able to do these jobs. First, it bears re-stating that the ALJ determined that Pruett retained the RFC to do these jobs during the relevant period under review, not that she is currently capable of this level of work. Second, the burden rests on the claimant, at step four, to show she could not have done any of her past relevant jobs during the period of alleged disability. That means, Pruett must point to objective evidence and credible testimony from which this court could

conclude that the ALJ erroneously assessed her RFC. Pruett does not meet her burden here.

A.  **The ALJ properly discredited Pruett.**

Pruett "strongly objects" to the ALJ's determination that she is less than fully credible. Complaint at 40. She contends the ALJ should have questioned her further if he had concerns about her testimony. Pruett includes pages of social security regulations in her brief, but makes no legal argument to support her objection to the ALJ's evaluation of her testimony.

If the claimant produces objective medical evidence of an underlying impairment which could reasonably be expected to produce some degree of the symptoms alleged, and there is no affirmative evidence of malingering, the ALJ must assess the credibility of the claimant regarding the severity of symptoms. Smolen v. Chater, 80 F.3d 1273, 1281-82 (9th Cir. 1996); Cotton v. Bowen, 799 F.2d 1403, 1407-08 (9th Cir. 1986). The ALJ may reject the claimant's testimony regarding the severity of her symptoms only by providing clear and convincing reasons for doing so. Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993); Smolen, 80 F.3d at 1283.

In assessing a claimant's credibility the ALJ may consider: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for truthfulness, prior inconsistent statements concerning the symptoms, and other testimony by the

claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) the objective medical evidence; (5) the location, duration, frequency, and intensity of symptoms; (6) precipitating and aggravating factors; (7) the type, dosage, effectiveness, and side effects of any medication; and (8) treatment other than medication. See Smolen, 80 F.3d at 1281-82.

The ALJ found Pruett's contention that she has not been able to work since April, 1993, not fully credible "in light of [her] own description of her activities and lifestyle, the type of medications and dosages reported, [her] assertions concerning her ability to work, the medical history, and the reports of the treating and examining practitioners." Tr. 22.

Pruett argues the ALJ's reference to her subjective descriptions of her activities and lifestyle "is extremely misleading and confusing" because she "was a stay-at-home mother caring for a newborn child and unable to work due to debilitating symptoms which, for the most part, kept her home-bound and resting in bed...". Complaint at 49.

I find the ALJ reasonably determined that Pruett's own admission about her activities during the relevant period contradict her assertion that she was primarily bed-ridden. For instance, when Pruett filled out a self-evaluation worksheet on

December 8, 1993, she checked "none" in response to questions about whether she had an impairment, and what activities were impaired. Tr. 22-23, 706. In September, 1994, Pruett reported to her family physician, Ronald Johnson, M.D., that she had no particular physical problems, only intermittent symptoms of irritable bowel syndrome, viral syndrome, cervical adenopathy, pharyngitis, and hypersomia. Tr. 751. Dr. Johnson encouraged her to start working again. Id.

Pruett testified that she didn't apply for DIB until September, 2000, because she was "severely ill with seizures so [she] couldn't fill out any paperwork." Tr. 853. Yet, as the Commissioner points out, Pruett didn't report seizure symptoms during the relevant period. Tr. 161-79, 694-713, 745-55.

Pruett also testified that her depression during the relevant period would have prevented her from working, even if she didn't have the other alleged impairments. Tr. 838. However, her psychiatric records from Good Samaritan Mental Health Center where Pruett attended some counseling during her divorce indicate that her symptoms were situational and that she responded well to treatment. Tr. 695-713.

The ALJ also considered Pruett's work attempt in 1994, 10 months after her alleged onset of disability. Tr. 23. He wrote, "[t]his is indicative that she had at least some work capacity." Id. Pruett argues the ALJ shouldn't have used her work attempt

to discredit her because he stated at the beginning of his opinion that he would give her the "benefit of the doubt" that it was an unsuccessful work attempt. Id.; Tr. 20, 23. Pruett is incorrect. The ALJ gave her the benefit of the doubt with respect to whether Pruett had substantial gainful activity (SGA) after her alleged onset date, notwithstanding the impact on her credibility. Tr. 20. If Pruett were found to have engaged in SGA after her alleged onset date she would have been found not disabled at step one. Instead, the ALJ gave Pruett the benefit of the doubt at step one, but then properly considered the fact Pruett worked for several months after her alleged disability onset as an indication that she had "some work capacity," during the time she now says she was unable to even perform basic life activities.

In sum, the ALJ found many inconsistencies between the degree of disability alleged by Pruett and her activities of daily living during the relevant period. See Reddick v. Chater, 157 F.3d 715 (9th Cir. 1998)(inconsistency between a claimant's alleged degree of limitation and her activities of daily living in a valid credibility factor). The ALJ also found a lack of objective medical evidence to substantiate Pruett's subjective limitations, as discussed later in this opinion. I find these to be clear and convincing reasons to discredit Pruett's testimony.

## B. The ALJ properly considered lay witness testimony.

Pruett renews her objection to the ALJ's credibility assessment with respect to her husband, a lay witness. Mr. Pruett testified at the hearing about his observations of Pruett's impairments since 1997. Tr. 841. He conceded that he was unable to comment about her condition prior to that time. Id. Accordingly, in his written decision the ALJ stated, "The testimony of the claimant's husband related to 1997 and later. He noted the claimant is worse now than she was in 1997." Tr. 22.

I disagree with both Pruett and the Commissioner that this statement constituted a rejection of Mr. Pruett's testimony. The ALJ must account for lay witness testimony and provide germane reasons for rejecting it, but he is not required to discuss non-probative information. See Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001); see also Vincent ex. rel. Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984). Mr. Pruett's testimony was clearly non-probative of disability in this case, so the ALJ needn't have commented on it at all.

Nevertheless, even if it could be construed as a rejection, I find Mr. Pruett's inability to address Pruett's condition pre-1997, is a germane reason to discount his testimony, since it is non-probative of whether Pruett was disabled prior to September 30, 1995, her date last insured.

## C. The ALJ properly evaluated the medical evidence.

Though the record contains ample medical evidence, most of it relates to a period after Pruett's insured status expired on September 30, 1995. The ALJ reviewed this evidence "to determine if a more recently diagnosed impairment can be attributed back to the period under question." Tr. 21. However, none of Pruett's doctors can confirm that her current conditions existed prior to October, 1995, save depression, and none of her doctors during that period assessed work-related limitations except moderate limitations in interacting with the general public. Tr. 23, 727. Thus, the ALJ concluded that the "great majority of [Pruett's] specific limiting impairments/symptoms in her Disability Report were not present during the period under review." Tr. 23, 70.

On April 14, 2004, Neurologist John Melson, M.D., opined that Pruett has a variant of Guillian-Barre syndrome, yet the ALJ found that "the characteristic symptoms noted in the Merck manual for this 'usually rapidly progressive form of polyneuropathy' are not noted to be present in the medical records from the period under review." Tr. 21, 666. I need not address Pruett's contention that the ALJ misused Dr. Melson's diagnosis because the fact remains that a diagnosis from 2004 would not, in and of itself, suffice to establish that Pruett is currently disabled, let alone that she was disabled in 1995. See Key v. Heckler, 754 F.2d 1545, 1549-50 (9th Cir. 1985).

Pruett "freely admits that there is limited medical evidence and documentation for the time under review," but she contends it "is not realistic" to require objective medical evidence of her impairments prior to September, 1995. Complaint at 17. However, if objective medical evidence were not required, disability benefits would be available for the asking- a result plainly contrary to Congress' intent as expressed in 42 U.S.C. § 423(d)(A). See Fair v. Bowen, 885 F.2d 597, 603-04 (9th Cir. 1989).

Pruett argues that she has demonstrated that her doctors "were attempting to determine the cause(s) of her illness without success." Complaint at 17. She points to Dr. Johnson's statement that she was "definitely unemployable" as evidence that even though he couldn't pin-point the problem he knew she was disabled. Complaint at 18, 39; Tr. 754. But as the ALJ noted, Dr. Johnson's opinion is not persuasive because it did not contain an assessment of Pruett's work-related limitations, and contemporaneous chart notes did not support his conclusion. Tr. 23.

Disability has both a medical and vocational component. See 20 C.F.R. § 416.960. Because a medical source does not have the expertise to comment on the vocational component of disability, a statement by a medical source that a person is unable to work is not accorded much weight. See 20 C.F.R. § 416.927(e)(1). The

ALJ must consider medical opinions about a claimant's condition and functional limitations, along with all other evidence in the record, to determine whether a claimant is disabled under the Social Security Act. SSR 96-5p. The ALJ also has a duty to re-contact a physician if a conflict or ambiguity in a medical source statement cannot be resolved without doing do. See 20 C.F.R. §404.1512(e). But in this case Dr. Johnson had passed away. Tr. 23. Even if he had been available, however, he would not have been able to speak to Pruett's condition after June, 1995, because she "fired" him, as noted on a page of her record containing a copy of an unpaid bill. Tr. 749.

In sum, I find the ALJ properly assessed the medical evidence under review and reasonably determined that no objective medical evidence substantiated Pruett's claimed impairments beginning prior to her date last insured, except depression, which was not disabling.

As set forth above, the ALJ properly found plaintiff not disabled. See also Flaten v. Secretary of HHS, 44 F.3d 1453, 1458 (9th Cir. 1995)

## CONCLUSION

Based on the foregoing, the Commissioner's decision is AFFIRMED and this case is DISMISSED.

IT IS SO ORDERED.

DATED this 8th day of September, 2005.

_____
Thomas Coffin
United States Magistrate Judge